IN UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAHANT DENTAL, PLLC d/b/a COTTON WOOD DENTAL, | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| VS. | ) | 3:24-CV-1791-G |
| MASSACHUSETTS BAY INSURANCE COMPANY, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the defendant Massachusetts Bay Insurance Company ("Mass Bay") for summary judgment (docket entry 18). For the reasons stated below, the motion is granted.

## I. BACKGROUND

This is an insurance coverage dispute. In November of 2017, the plaintiff Mahant Dental, PLLC d/b/a Cotton Wood Dental ("Mahant Dental" or "the plaintiff"), whose sole member is Dr. Megha Patel ("Patel"), and SAI Cottonwood Properties ("the landlord") entered into a lease agreement for office space located at 2230 West Walnut Hill Lane in Irving, Texas ("the Property") for a period of three years and three months wherein the plaintiff operated the Cotton Wood Dental office. *See* Appendix to Defendant's Brief in Support of its Motion for Summary Judgment ("Defendant's Appendix") (docket entry 20) at APPX 427-APPX 441; Defendant Massachusetts Bay

Insurance Company's Brief in Support of its Motion for Summary Judgment ("Motion") (docket entry 19) at 1-2. Patel admits that "the property was already set up as a dental practice with all tools and equipment" when she purchased the practice in 2017.[1] Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Reply") (docket entry 30) at 3 (citing Defendant's Appendix at APPX 245); *see also* Defendant's Appendix at APPX 232 ("The system and dental equipment was in place when insured moved in 2017."). The lease provided that the landlord was responsible for repairs for damages to the building. Motion at 5 (citing Defendant's Appendix at APPX 432). At the time of the loss at issue, Mahant Dental held a month-to-month lease on the Property but stopped paying rent in October 2022 and never made repairs or returned to the Property. *Id.* at 2, 11; Defendant's Appendix at APPX 199.

Mass Bay issued a businessowners insurance policy ("the Policy") to Mahant Dental for coverage of the Cotton Wood Dental office. Motion at 1; *see also* Defendant's Appendix at APPX 001-APPX 197. The Policy provided coverage for the period between May 1, 2022, through May 1, 2023. *Id.*

On August 13, 2022, outside of normal business hours, a valve in the water supply line to the filtration system in the Cotton Wood Dental office failed, resulting in damage to the Property and the plaintiff's business personal property, as well as loss of

---

[1] Patel purchased the dental practice from a dentist, who previously had purchased the practice from another dentist in the same space. Reply at 3.

income. Plaintiff's Original Petition ("Petition") ¶¶ 8-9, *attached to* Defendant's Notice of Removal ("Notice") (docket entry 1); Motion at 1.

On August 14, 2022, Mahant Dental first provided notice of loss to Mass Bay. Motion at 2 (citing Defendant's Appendix at APPX 242). On that day and the following day, Mass Bay contacted the plaintiff to "get information and start mitigation efforts." *Id*. Rinkesh Desai ("Desai"), Patel's spouse, served as the primary point of contact during the claims handling process. *Id*. On August 26, 2022, Mass Bay issued the plaintiff "a $15,000 advance . . . for mitigation of damage to property to enable the insured to get back into operation as quickly as possible." Defendant's Appendix at APPX 198; see also *id*. at APPX 236; Motion at 4.

Patel formed a new business entity, Samarth & Seva, PLLC,[2] and on September 30, 2022, signed an asset purchase agreement to acquire the "Precious Smiles" dental practice located at 3989 North Belt Line Road in Irving, Texas, near the Cotton Wood Dental office ("Precious Smiles location"). Motion at 2; Reply at 3, 4 ("Plaintiff presents no evidence that it was unable to repair the [P]roperty. Rather, Plaintiff was able to remodel a new location for the dental practice it purchased during September of 2022, a month after this loss.") (citing Defendant's Appendix at APPX 257); *see also* Defendant's Appendix at APPX 250, APPX 385. "[S]ometime in September to October of 2022, and within about two months of the loss[,]" Patel began operations at the Precious Smiles location. Motion at 2 (citing Defendant's Appendix at APPX 299-

[2] This entity is not insured under the Policy. Motion at 6.

APPX 300, APPX 304). Mass Bay avers that "[u]nbeknownst to Mass Bay's adjuster, Plaintiff had started operations at a different location about 1.5 miles away and under a different name." Reply at 3. Desai contends that Patel planned to purchase a second location before the loss. Plaintiff's Brief in Support of its Response to Defendant's Motion for Summary Judgment[3] ("Response") (docket entry 25-1) at 4 (citing Defendant's Appendix at APPX 281).

The court's own research discovered that Patel now operates "Cottonwood Dental" out of the Precious Smiles location. *See* https://www.cwdentalgroup.com/ (last accessed October 28, 2026) ("Cottonwood Dental is located at 3989 N Belt Line Rd, Irving, TX. . . . Dr. Megha Patel and the team at Cottonwood Dental provide quality dental care to patients in the Irving area."). The Texas Comptroller of Public Accounts indicates that Mahant Dental, PLLC is a viable entity,[4] but Samarth & Seva, PLLC is

---

[3] The only evidence "attached" to the plaintiff's response to the defendant's motion for summary judgment is the opinion of the defendant's expert Louis G. Fey Jr. ("Fey"). *See* Expert Report of Louis G. Fey Jr. ("Fey Report"), *attached to* Response as Exhibit 1-A. This "appendix" violates N.D. TEX. CIV. R. 56.6(a), (b). Thus, when referencing this pleading, the court cites to the page number generated by CM/ECF at the top of each page. The plaintiff does not rebut Fey's opinion that "Patel's purchase of another dentistry practice under another corporate name, and her transfer of equipment from Mahant's operation, complicated [Mass Bay]'s investigation and evaluation of the loss[.]" Fey Report at ECF 34.

[4] "SOS Registration Status: ACTIVE; Effective SOS Registration Date: 10/11/2017; Registered Agent Name: MEGHA PATEL" *Id.*

not.[5] *See* Texas Comptroller of Public Accounts (last accessed October 28, 2026); *see also* Defendant's Appendix at APPX 250.

---

[5] According to Patel, at some point Samarth & Seva, PLLC "later converted" to Mahant Dental, PLLC. Defendant's Appendix at APPX 250. In his expert report, Fey noted that, when deposed, "Dr. Patel and Mr. Desai failed to answer basic questions . . . or important matters, including when Dr. Patel began operations at her Beltline location [*i.e.*, Precious Smiles location], the date it was purchased, or any details of the purchase." Fey Report at ECF 43. Moreover, Fey also observed, in pertinent part, as follows:

> I was disturbed by the lack of answers to simple questions throughout the deposition testimony of Dr. Patel and Mr. Desai.
>
> The deposition testimony of Megha Patel, DDS, included the following answers:
>
> • "I don't know" 75 times
> • "I can't remember" 84 times
> • "I don't remember" 3 times
> • "not sure" 37 times
> • "I don't want to guess" 7 times
> • "Unsure" 5 times
>
> The deposition testimony of Rinkesh Desai included the following answers:
>
> • "I don't know" 68 times
> • "I can't remember" 2 times
> • "I don't remember" 40 times
> • "Not sure" 44 times
> • "I don't want to guess" 1 time
> • "Not definitively" (or some derivative of that phrase) 5 times
>
> *Id*. at ECF 42 (emphasis omitted).

Randall Taylor, a building consultant with West Fire Construction & Restoration, Inc. retained by Mass Bay, estimated that repairs to the Property would take 60 to 90 days ("Taylor Estimate"). Motion at 2; Defendant's Appendix at APPX 337-APPX 341.

Mass Bay initially planned to split water mitigation expenses with the landlord based on the lease agreement and thus issued payment for half of those expenses in October 2022.[6] Motion at 5-6; *see also* Response at 7. However, the landlord advised Mass Bay that it would not pay for mitigation or repairs because Mahant Dental had rented the Property month-to-month for about two years and refused to sign a new lease agreement; thus, the landlord feared paying for repairs only to have Mahant Dental move out of the Property. Motion at 5-6; *see also* Defendant's Appendix at APPX 199, APPX 222, APPX 227. Thereafter, Mass Bay paid for water mitigation and interior repairs. Motion at 6; see also *id*. ("Mass Bay paid $56,894.16 for water mitigation and building repairs. This was a combination of the Servpro mitigation expense of $12,218.78, and the actual cash value of the MBW Servpro estimate for interior repairs, totaling $44,675.38. Mass Bay paid for half ($6,109.39) of the water mitigation repairs in a check dated October 17, 2022. The $81,155.15 check dated February 17, 2023, included $44,675.38 for interior repairs and the other half of the Servpro water mitigation repair.") (citations omitted); Reply at 3.

---

[6] By email dated October 17, 2022, adjuster Steven Shands notified Desai that "[a]ttached is the Servpro invoice, [Mass Bay] paid half, the landlord should pay the other half." Defendant's Appendix at APPX 225-APPX 226.

RMC Group ("RMC"), dental equipment specialists retained by Mass Bay, initially planned an inspection of the Property for August 31, 2022, but could not reach Desai to confirm the appointment. *See* Defendant's Appendix at APPX 233-APPX 234. On September 7, 2022, RMC inspected the Property. Motion at 3. RMC prepared a revised schedule of loss of the plaintiff's damaged business personal property dated January 4, 2023. *Id.*; *see also* Defendant's Appendix at APPX 378-APPX 383.

In an email to Mass Bay's adjuster on March 16, 2023, Patel listed items for Mass Bay's consideration, including "[m]oving expense[,] relocation/rebuild[, and] items not damaged but due to move will not [be] reusable[.]" Defendant's Appendix at APPX 405.

On April 7, 2023, the plaintiff notified Mass Bay that it disagreed with RMC's schedule of loss "but did not state what was wrong with it." Motion at 3 (citing Defendant's Appendix at APPX 222). On April 10, 2023, the plaintiff provided Mass Bay with a proposal for new equipment created by Patterson Dental supply ("Patterson Proposal") "without an explanation as to why more equipment was being claimed than was damaged." *Id*. (citing Defendant's Appendix at APPX 215, APPX 220-APPX 222). Mass Bay characterizes the Patterson Proposal as "a simple price sheet for dental equipment and office furniture, in response to Plaintiff contacting Patterson Dental to request prices." Reply at 4: see also *id*. ("The Patterson Proposal is silent as to the cause or extent of any damage to Plaintiff's BPP, and Patterson Dental admitted that they did not do any investigation of same."). The Patterson Proposal is not in evidence. See *id*.

("[T]he Patterson Proposal is not part of the summary judgment record, so Mass Bay objects to Plaintiff's reliance on same.").

An email from Mass Bay's adjuster to Desai dated April 26, 2023, read, in pertinent part, as follows:

> We can talk to RMC anytime, but we need to know what you are questioning. . . . Per my prior emails to you and phone call.
>
> You need to tell me what items are in question. I can't pick and choose which items you think are damaged from a Patterson quote. You have the worksheet from RMC (see attached), so you know what is being paid for, how much is being paid and what items were found to have no damage (or omitted). RMC inspected and has a lot of photos of your dental equipment.

Defendant's Appendix at APPX 215-APPX 216; see also *id*. at APPX 216 ("Please provide me with the specific item (you can use RMC attached inventory and use the No. you are referring to) you are concerned about and a description of what your concern is and a photo showing the damage. I will forward to Brandon, and he will review your concerns[.]").

On June 16, 2023, Don Rakow with J.S. Held, a new expert hired by Mass Bay, reinspected the Property but found that "most of the equipment identified on RMC's Schedule was no longer present in the building and the limited equipment presented during the inspection displayed no apparent signs of water-related damage." Motion at 3 (citing Defendant's Appendix at APPX 387); see also *id*. at 7-8; Defendant's Appendix at APPX 385 ("We discovered over the course of our inspection with Mr. R. Desai that

multiple items from the [RMC] schedule of loss were no longer located at the original location.").

To date, Mass Bay has paid the plaintiff a total of $418,649.23. *See* Motion at 4 (breakdown); *see also* Defendant's Appendix at APPX 395-APPX 402.

On May 22, 2024, Mahant Dental initiated this action against Mass Bay in the 95th Judicial District Court of Dallas County, Texas. *See generally* Petition. The plaintiff contends that Mass Bay wrongfully denied and/or underpaid its claim by not providing full coverage under the Policy and alleges breach of contract and violations of Chapters 541 and 542 of the Texas Insurance Code. *Id*. On July 12, 2024, Mass Bay removed the case to this court on the basis of diversity jurisdiction. *See* Notice ¶ 21. Mass Bay moves for summary judgment on all of the plaintiff's claims. *See generally* Motion; *see also* Reply at 8 ("[T]he undisputed opinion of Lou Fey, and industry standards expert, is that Mass Bay handled Plaintiff's claim in compliance with established industry standards, the Texas Insurance Code, and applicable common law duties.") (citing Fey Report).

## II. ANALYSIS

### A. Legal Standard

Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." FED. R. CIV. P. 56(a), (c)(1).[7] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in its favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A nonmoving

---

[7] Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## B. ANALYSIS

### 1. Breach of Contract

The parties agree that Texas substantive law applies to this contract. "In Texas, insurance policies are interpreted by the same principles as contract construction." *Terry Black's Barbecue, L.L.C. v. State Automobile Mutual Insurance Company*, 22 F.4th 450, 454 (5th Cir. 2022) (citing *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010)); *Crenshaw v. State Farm Lloyds*, 425 F. Supp. 3d 729, 733 (N.D. Tex. 2019) (O'Connor, J.) (citing *Barnett v. Aetna Life Insurance Company*, 723 S.W.2d 663, 665 (Tex. 1987)). Under Texas law, the "'elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Sugg v. Midwestern University*, 105 F.4th 345, 352 (5th Cir. 2024) (quoting *Smith International, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Marketing & Supply Company v. Kalama International, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. – Houston [1st Dist.] 2001, no pet.))). "[T]he insured bears the burden of establishing coverage under the policy." *Covington Specialty*

*Insurance Company v. USAI LP*, No. 21-10010, 2021 WL 4901485, at *1 (5th Cir. Oct. 20, 2021) (per curiam) (citing *JAW The Pointe, L.L.C. v. Lexington Insurance Company*, 460 S.W.3d 597, 603 (Tex. 2015)). "The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. CBI Industries, Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (citation omitted). "In interpreting insurance contracts, Texas courts give words 'their plain, ordinary meaning unless the parties intended the term to have a different, technical meaning.'" *Laur v. Safeco Insurance Company of Indiana*, No. 23-10315, 2024 WL 2991196, at *3 (5th Cir. June 14, 2024) (per curiam) (quoting *Great American Insurance Company v. AFS/IBEX Financial Services, Inc.*, 612 F.3d 800, 805 (5th Cir. 2010) (citing *DeWitt County Electric Cooperative, Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex. 1999))).

*a. Business Income Provision*

Under the Policy, Mass Bay agreed to "pay for the actual loss of Business Income . . . sustain[ed] due to the necessary 'suspension' of . . . 'operations' during the 'period of restoration'." Defendant's Appendix at APPX 058. The Policy defines "Period of Restoration" as follows:

> "Period of Restoration"
>
> a. Means the period of time that:
>
> (1) Begins:
>
> (a) After the number of hours shown as the Business Income Waiting Period in the Declarations after the time of direct physical loss or damage

> for Business Income Coverage;
>
> * * *
>
> and
>
> (2) Ends on the earlier of:
> (a) The date when the property at the described premises should be repaired, rebuilt or replaced (to a condition permitting occupancy) with reasonable speed and similar quality; or
> (b) The date when business is resumed at a new permanent location; or
> (c) Exhaustion of the number of consecutive months as shown on the Policy Declarations Page.

*Id*. at APPX 105. "Business Income Coverage" began 24 hours after the loss occurred, as provided for by the "Business Income Waiting Period" in the Policy Declarations. See *id*. at APPX 003.

Mass Bay paid the plaintiff a total of $163,440.00 for its business income loss. Motion at 3; see also *id*. at n.14 ("This was a combination of an advance of $25,000 and supplemental payments of $52,850.00 and $85,590.00.") (citations omitted), 4.

The plaintiff asserts that is entitled to the full Policy limits for lost business income coverage – a full year of lost revenue – because the period of restoration never concluded. Response at 4, 10; *see also* Defendant's Appendix at APPX 003. Alternatively, the plaintiff appears to theoretically argue that the period of restoration should start on the date on which Mass Bay issued its check for interior repairs and end

eight months after the loss. Response at 8-11. That is, hypothetically using a restoration period of 60 days, *see* Taylor Estimate, the plaintiff asserts that the restoration period should be calculated from February 17, 2023, the date on which Mass Bay issued a check for interior repairs, to April 18, 2023, over eight months after the date of loss. *Id*. at 10. Without citation to the record, the plaintiff generally asserts that its "expert on business income calculated Plaintiff's monthly revenue to be $28,609.90."[8] *Id*. Thus, the plaintiff asserts that "Mass Bay still owes Plaintiff $70,207.51 under the Policy[.]" *Id*. at 11.

The Policy limits coverage to the time when the Property *should* have been repaired, rebuilt or replaced with reasonable speed and similar quality, not until repairs are *actually* completed. The plain meaning of the text in the parties' contract supports the interpretation that the "Period of Restoration" began on the date after the loss and

---

[8] The plaintiff must be referencing Scott E. Bushnell ("Bushnell") and a report prepared by Bushnell ("Bushnell Report"). *See* Defendant's Appendix at APPX 412-APPX 426. But see *United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir.) ("'Judges are not like pigs, hunting for truffles buried in the record.'") (per curiam) (quoting *Albrechtsen v. Board of Regents of the University of Wisconsin System*, 309 F.3d 433, 436 (7th Cir. 2002) (quotation omitted), *cert. denied*, 539 U.S. 941 (2003)), *cert. denied*, 589 U.S. 1113 (2019). The Bushnell Report does not refute the expert opinion that repairs to the Property should take 60 to 90 days, *see* Taylor Estimate, and assumes that "[t]he period of indemnity for the BI claim is 12 months" per the directive of plaintiff's counsel. *See* Defendant's Appendix at APPX 415, APPX 421 ("I have been advised by counsel to calculate the BI losses incurred by Cottonwood Dental for a 12-month period of restoration."); *see also* Motion at 12 ("Bushnell does not render any opinion as to the estimated time it would take for reconstruction from the loss – and would not be qualified to render such an opinion either.").

ended after 60 to 90 days, *see* Taylor Estimate, or the amount of time it should take for the Property to be repaired, rebuild, or replaced with reasonable speed and similar quality.[9] *See* Motion 9-12. Mass Bay issued business income payments to cover the plaintiff's business income damages through December 2022. See *id*. at 4, 12. Therefore, Mass Bay did not underpay the plaintiff's business income claim.

*b. Business Personal Property Provision*

The Policy provides coverage for the following:

> 1. Covered Property
> Covered Property includes . . . Business Personal Property as described in paragraph b. below. . . .
>
> * * *
>
> b. Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 1,000 feet of the building or structures or within 1,000 feet of the premises described in the Declarations, whichever distance is greater, including:
>
> (1) Property you own that is used in your business[.]

Defendant's Appendix at APPX 052.

---

[9] The court notes that if the Precious Smiles location (now Cottonwood Dental), a purchase not promptly disclosed to Mass Bay, is characterized as "a new permanent location[,]" then the period of restoration would be markedly shorter (*i.e.*, begin on the date after the loss and end on"[t]he date when business is resumed at a new permanent location[.]").

Without citation to the record, the plaintiff asserts that it "worked with Patterson Dental to estimate for the damaged BPP, totaling $409,438.55[,]" *see* Response at 8, but the Patterson Proposal is not in evidence. Moreover, the plaintiff failed to produce evidence to rebut the expert opinions of RMC or J.S. Held regarding the cause and extent of damage to the plaintiff's business personal property. Desai's testimony regarding the Patterson Proposal, standing alone, is not legally cognizable summary judgment evidence in support of the plaintiff's claim. Thus, the plaintiff failed to prove that it is entitled to any payment for business personal property loss above what Mass Bay has already paid.

*c. Tenant Improvements and Betterments Provision*

Under the Policy, "[i]mprovements and betterments are fixtures, alterations, installations or additions: (a) Made a part of the building or structure you occupy but do not own; and (b) You acquired or made at your expense but cannot legally remove." Defendant's Appendix at APPX 053. Mass Bay contends that it did not owe the cost of interior repairs because they were not covered under the Policy as "they were not made or acquired by the Plaintiff but rather were present when Plaintiff moved into the space." Reply at 2 (citing Defendant's Appendix at APPX 245); see also *id*. at 3; Defendant's First Amended Original Answer and Jury Demand ¶ 6, *attached to* Notice. As noted *supra*, it is undisputed that Patel purchased the dental practice housed in the Property from Dr. Vijay Patel in 2017, who purchased the dental practice from another dentist who operated there before him, and that the Property was already set up as a

dental practice with all tools and equipment. Reply at 3; *see also* Defendant's Appendix at APPX 245.[10] While Mass Bay did pay Mahant Dental $44,675.38 for interior repairs, *see* Motion at 6; *see also* Defendant's Appendix at APPX 410, the plaintiff has produced no competent evidence that it is owed more money for tenant improvements and betterments than Mass Bay has paid.

In sum, the court finds that the evidence shows that Mass Bay paid all claims covered by the Policy, and that the plaintiff is not entitled to any sum above what Mass Bay has already paid. As such, Mass Bay, having satisfied its obligations under the Policy, is entitled to summary judgment on the entirety of Mahant Dental's breach of contract claim.

---

[10] Q. Okay, well, when you started your practice at Cottonwood Dental did you have to buy a whole new dental equipment and tools, or did – when you moved in was it already there?
A. At Cottonwood Dental was the equipment and everything there? Yes.
Q. Okay, so when you purchased that practice and you moved into the lease space at 2230 West Walnut Hill it was already set up as a dental practice, correct?
A. Yes.
Q. Okay, so he left all of his patient files, correct?
A. Yes.
Q. He left all of the dental chairs and the – the carts with drawers that hold all the dental tools, correct?
A. Yes.
Q. Okay, and did you also take on staff that he had existing at that time?
A. Yes.

Defendant's Appendix at APPX 245.

2. Extra-Contractual Claims

The plaintiff asserts extra-contractual claims for alleged violations of Chapters 541 and 542 of the Texas Insurance Code.[11] *See* Petition at 4-6; Response at 12-17. In light of the foregoing, the court cannot conclude that Mass Bay acted in bad faith or lacked any reasonable basis in handling Mahant Dental's claim. Moreover, "when an insured seeks to recover policy benefits as damages for an insurer's statutory or common law violation and 'the issue of coverage is resolved in the insurer's favor, extra-contractual claims,' such as claims for violating the DTPA, Sections 541 and 542 of the Texas Insurance Code, and the common law duty of good faith and fair dealing, 'do not survive.'" *In re New York Inn, Incorporated*, No. 24-10338, 2025 WL 999084, at *9 (5th Cir. Apr. 3, 2025) (per curiam) (quoting *Page*, 315 S.W.3d at 532); see also *Vandelay Hospitality Group LP v. Cincinnati Insurance Company*, No. 3:20-CV-1348-D, 2021 WL 2936066, at *8 (N.D. Tex. Jul. 13, 2021) (Fitzwater, J.); *Selery Fulfillment, Inc. v. Colony Insurance Company*, 525 F. Supp. 3d 771, 781 (E.D. Tex. 2021). Here, the plaintiff has not demonstrated that it suffered any independent injuries. See *In re New York Inn*, 2025 WL 999084 at *9 ("There is one exception to this general rule when an insurer commits an act so extreme that it causes an injury independent of the policy

---

[11] In response to the defendant's motion for summary judgment, the plaintiff clarified that it "does not bring claims under the Texas Deceptive Trade Practices [A]ct or extra-contractual claims of the common law of bad faith." Plaintiff's Response to Defendant's Motion for Summary Judgment (docket entry 25) at 1.

claim.") (citing *USAA Texas Lloyds Company v. Menchaca*, 545 S.W.3d 479, 499 (Tex. 2018)). Thus, the plaintiff has asserted only extra-contractual claims with no independent-injury exception.

Mahant Dental bears the burden of proving that no reasonable basis existed for the denial or underpayment of its claim and also of demonstrating that a genuine issue of material fact exists as to its extra-contractual claims. Since the plaintiff has not shown that it can meet either burden, summary judgment in favor of Mass Bay is appropriate as to Mahant Dental's extra-contractual claims. *Becerra v. Allstate Vehicle and Property Insurance Company*, No. 4:19-CV-2571, 2021 WL 1135031, at *3 (S.D. Tex. Feb. 3, 2021). Accordingly, the court therefore grants summary judgment on all extra-contractual claims.

## III. CONCLUSION

For the reasons discussed above, the defendant's motion for summary judgment is **GRANTED**. Judgment will be entered for Mass Bay.

**SO ORDERED**.

October 29, 2026.

**A. JOE FISH**
**Senior United States District Judge**